La Sorsa & Beneventano
Attorneys for the Plaintiff
3 Barker Avenue, Suite 375
White Plains, New York 10601
(914) 682-3300 (telephone)
(914 682-3740 (facsimile)
**Email address: gml@lasobenlaw.com**

## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH RODRIGUEZ<br><br>Plaintiff,<br><br>- Against –<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | **COMPLAINT**<br><br>CASE NO: _____<br><br>JUDGE: _____ |

Plaintiff, **ELIZABETH RODRIGUEZ**, (hereinafter "ER") by her attorneys **LASORSA & BENEVENTANO**, complaining of the defendant herein, respectfully show to this Honorable Court and allege, upon information and belief:

### JURISDCITION AND VENUE

1. This is an action for negligence. This Court has jurisdiction pursuant to the Federal Tort Claims Act. 28 U.S.C §2671, *et seq* and 1346(b).

2. This action is being filed in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1402(b) in the venue within which the Defendant maintains its place of business and the situs of the accident. Venue is proper in the US District Court for the Southern District of New York.

3. The matter was subject to an administrative claim submitted on behalf of

1

the plaintiff covering from approximately January 26, 2018 through a continuous course of treatment to January 20, 2020.

5.   A claim for damage, injury or death pursuant to Form 95 was filed on behalf of plaintiff with the Department of Health and Human Services, on the 5th of March, 2020 setting forth the material facts underlying the within action pursuant to 28 U.S.C. §2401(b) setting forth the material facts underlying the within action pursuant to 28 U.S.C. §2401(b).

5.   The Department of Health and Human Services acknowledged receipt of Standard Form 95, Claim for Damage, Injury or Death on March 11, 2020, assigning claim number 2020-0362.

6.   On December 15, 2020 HHS denied the claim.

7.   This action is now being brought within six months of the denial of the aforementioned claim.

8.   Plaintiff has duly complied with all prerequisites to the commencement of the within action pursuant to 28 U.S.C §2675.

## STATEMENT OF FACTS

9.   Upon information and belief, at all times hereinafter mentioned, defendant Unites States of America (hereinafter "defendant") owned a medical facility known as Urban Health Plan, Inc. located at 1065 Southern Boulevard, Bronx, New York 10459-2417.

10.   Upon information and belief, at all times hereinafter mentioned, the defendant operated a medical facility unknown as Urban Health Plan, Inc. located at 1065 Southern Boulevard, Bronx, New York 10459-2417.

11. Upon information and belief, at all times hereinafter mentioned, defendant employed various physicians, nurses, technicians and other individuals for the purpose of rendering medical care and treatment at said medical facility.

12. Upon information and belief, at all times hereinafter mentioned, the defendant held itself out to the public, and more particularly to plaintiff ER, as rendering and being capable of rendering medical care and treatment in accordance with the standards of good and accepted medical practice at said medical facility.

13. That at all times hereinafter mentioned, defendant, WILFRED CASTILO, M.D., is a physician duly licensed to practice medicine in the State of New York.

14. That at all times hereinafter mentioned, defendant, WILFRED CASTILLO is an employee or is otherwise affiliated with defendant, Urban Health Pan, Inc.

15. That at all times hereinafter mentioned, defendant, PEDRO SUAREZ, M.D., is a physician duly licensed to practice medicine in the State of New York.

16. That at all times hereinafter mentioned, defendant, PEDRO SUARZ, M.D., is an employee or is otherwise affiliated with defendant, Urban Health Pan, Inc.

17. That at all times hereinafter mentioned, defendant, ROBERT SOLOMON, M.D., is a physician duly licensed to practice medicine in the State of New York.

18. That at all times hereinafter mentioned, defendant, ROBERT SOLOMON, M.D., is an employee or is otherwise affiliated with defendant, Urban Health Pan, Inc.

19. Commencing in 2016 and continuing through January 20, 2020, the plaintiff, ER complained of severe pain radiating down to her lower extremities causing paralysis and bleeding to defendant's medical facility, more particularly, to defendant CASTILLO, plaintiff's treating physician, and defendant SUAREZ.

20. Upon information and belief, at all times hereinafter mentioned, the plaintiff, ER complained numerous times to the medical facility of continuous pain, bleeding and paralysis of her lower extremities from 2016 through a continuous course of treatment to January 20, 2020.

21. Commencing in 2016 and continuing through January 20, 2020, the plaintiff ER received medical care and treatment at the medical facility for certain symptoms and complaints, including but not limited to, pain, paralysis and bleeding from her lower extremities unaware of the existence of the structure, foreign object and/or indwelling device embedded in plaintiff's pelvis.

22. On January 26, 2018, defendant CASTILLO performed a medical procedure which was intended to completely remove an IUD from plaintiff, which had been previously inserted in 1999.

23. On November 29, 2018, defendant SUAREZ examined the patient and did not diagnose or observe that a portion of the IUD had been left behind in the plaintiff.

24. On or about December 8, 2018, a bilateral hips/Pelvis X-Ray was taken by the X-Ray department at said defendant's medical facility and was read and interpreted by defendant SOLOMON on December 12, 2018, which revealed the existence of "some sort of structure in the pelvis, it could be a foreign object and/or indwelling device".

25. That defendant SOLOMON recommended clinical correlation, but did not coordinate, arrange or conduct appropriate follow up treatment.

26. On February 8, 2019, defendant CASTILLO examined the patient and did not diagnose or observe that a portion of the IUD had been left behind in the plaintiff.

27. On February 13, 2019, defendant Castillo requested and conducted a Thin Prep/HPVPlus/CT/GC (over 30) on the plaintiff, and did not diagnose or observe that a portion of the IUD had been left behind in the plaintiff.

28. Throughout 2019 and up to and continuing until February 11, 2020, plaintiff continued to be treated by medical providers at defendant URBAN, who did not diagnose or observe that a portion of the IUD had been left behind in the plaintiff.

29. On March 17, 2020, plaintiff was diagnosed as having an IUD component in the endometrial cavity of the uterus.

30. On November 25, 2020, plaintiff ER underwent a removal of the components of the IUD that were left in plaintiff's endometrial cavity.

## AS AND FOR THE FIRST CAUSE OF ACTION ON BEHALF OF ELIZABETH RODRIGUEZ

31. Plaintiff repeats, realleges and reiterate each and every paragraph heretofore set forth designated "1" through 30" with the same full force and effect as if fully set forth herein .

32. That at all the times hereinafter mentioned, Plaintiff was under the exclusive care, custody, control and management of each of the defendants.

33. That it was the duty of the defendants, its physicians, nurses, physicians assistants, nurse practitioners, other medical providers, therapists, technicians and other agents, servants and employees to render that degree of medical care and attention to plaintiff as was warranted under the circumstances surrounding plaintiff medical conditions, in accordance with good and accepted standards of medical and podiatric and podiatric surgical care.

34. That the defendants, and each of their physicians, nurses, physicians assistants, nurse practitioners, other medical providers, therapists, technicians and other agents, servants and employees were careless, reckless and negligent in the care and treatment rendered to Plaintiff: in failing to render that degree of medical care in conformity with the good and accepted medical and surgical practices; in failing to adhere to the good and accepted medical practices within the medical and surgical community; in departing from good and accepted medical and surgical practice within the medical, and surgical community; in rendering a degree of care to Plaintiff that was not adequate and was outside the appropriate standard of care; in improperly administering medical care and attention to Plaintiff; in failing to render that degree of medical care towards Plaintiff that Plaintiff rightfully expected and anticipated; in failing to treat plaintiff's condition; in failing to properly observe, monitor and treat plaintiff's conditions, in failing to assign proper and well-trained personnel to treat her; in failing to properly assess Plaintiff's condition; in failing to properly diagnose and treat plaintiff's condition; in failing to obtain proper consultations; in causing plaintiff to suffer and experience unnecessary pain and mental anguish and in causing iatrogenic injuries, by failing to timely completely and properly diagnose, treat and/or remove, extract Plaintiff's IUD device.

35. That as a result of the foregoing, plaintiff was rendered sick, sore, lame and disabled, was caused to incur hospital and medical expenses in an endeavor to cure and/or alleviate herself of the injuries sustained; was caused to become unable to tend to her usual duties and pursuits; and, was otherwise damaged, was caused to undergo subsequent medical treatments, psychological damages and treatments, loss

of income, additional and unnecessary out of pocket expenses, pain, suffering and interference and deprivation of subsequent enjoyment of life.

36.   That the aforesaid injuries were occasioned wholly and solely by the carelessness, negligence and unskillfulness of the defendants herein and without any negligence on the part of the plaintiff contributing thereto.

37.   The amount of damages sought herein exceeds the jurisdictional limits of all lower courts

38.   The limitations on liability set forth in CPLR Section 1600 et seq does not apply.

39.   By virtue of the foregoing, plaintiff ER has been caused to suffer damages in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION
## LACK OF CONSENT

40.   Plaintiff repeats, realleges and reiterate each and every paragraph heretofore set forth designated "1" through 39" with the same full force and effect as if fully set forth herein .

41.   That Plaintiff did not give consent to the procedures performed upon her.

42.   Defendants failed to inform the plaintiff of the risk, hazards and alternatives connected with the treatment rendered and procedures performed, so that an informed consent could be given.

43.   Reasonably prudent person in the plaintiff's position would not have undergone the treatment rendered and procedures performed if plaintiff had been fully

informed of the risks, hazards, and alternatives connected with said procedures in the proximate cause of the injury sustained by plaintiff.

44. As a consequence of the foregoing there was not informed consent to the procedures utilized and/or treatments rendered.

45. That as a result of the foregoing, Plaintiff has been damaged.

46. That the aforesaid lack of informed consent was occasioned wholly and solely by the carelessness, negligence and unskillfulness if the defendants herein and without any negligence in the part of the Plaintiff contributing thereto.

**AS AND FOR A THIRD CAUSE OF ACTION ARISING FROM NEGLIGENT HIRING**

47. Plaintiff repeats, realleges, and reiterate each and every paragraph heretofore set forth designated "1" through "46" with the same full force and effect as if fully set forth herein.

48. Defendants, prior to the granting or renewing of privileges or employment of defendants, residents, nurses and radiologist, emergency room physicians, ostensible agents and others involved in plaintiff's care failed to investigate the qualifications, competence, capacity, abilities and capabilities of said defendants, radiologist, residents, nurses, emergency room personnel, and other employees, including but not limited to obtain.

49. Had the defendants made the above stated inquiry or in the alternative had defendant hospital reviewed and analyzed the information obtained in a proper manner, privileges and/or employment would not have been granted and/or renewed.

50. By reason of the defendants' failure to meet the aforementioned obligation, plaintiff, ELIZABETH RODRIGUEZ was treated by physicians, nurses, ostensible agents and/or employees who were lacking the requisite skills, abilities, competence and capacity, as a result of which plaintiff sustained severe injuries and complications.

## JURY DEMAND

51. Plaintiff hereby demand a trial by jury with respect to all claims made herein.

**WHEREFORE**, plaintiff ER demands judgment against the defendant in the sum of FIVE MILLION ($5,000,000.00) DOLLARS on the First Cause of Action, together with costs, interests and disbursements of this action.

Dated: White Plains, New York
March 3, 2021

GREGORY M. LASORSA, ESQ.
LaSorsa & Beneventano
Attorneys for Plaintiff
**ELIZABETH RODRIGUEZ**
3 Barker Avenue
White Plains, New York 10601
Federal District Roll No: 4067
(914) 682-3300

## DESIGNATION OF TRIAL COUNSEL

The Court hereby advised that GREGORY M. LASORSA, ESQ., is hereby designated at trial counsel in this matter.

Dated: White Plains, New York
March 3, 2021

_____
GREGORY M. LASORSA, ESQ.
LaSorsa & Beneventano
Attorneys for Plaintiff
3 Barker Avenue
White Plains, New York 10601
Federal District Roll No: 4067
(914) 682-3300